JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| TAMMY DAVIS and EDWIN LINWOOD, | Case No. 2:23-cv-10741-AB-MAR |
|---|---|
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** |
| v. | |
| AIDS HEALTHCARE FOUNDATION, | |
| Defendant. | |

Before the Court is Defendant AIDS Healthcare Foundation's ("Defendant") Motion to Dismiss Plaintiffs' Complaint Pursuant to FRCP 12(b)(6) or, In the Alternative, Motion for a More Definite Statement of Facts Pursuant to FRCP 12(e) and/or Motion to Strike Pursuant to FRCP 12(f) ("Motion," Dkt. No. 23). Plaintiffs Tammy Davis ("Ms. Davis") and Edwin Linwood ("Mr. Linwood") (collectively, "Plaintiffs") filed an Opposition, and Defendant filed a Reply. (Dkt. Nos. 28-29.) The Court heard oral argument on May 24, 2024 and took the matter under submission. For the following reasons, the Motion is **GRANTED WITH PREJUDICE**.

I. BACKGROUND

Plaintiffs bring this action against Defendant, asserting four causes of action for alleged violations of (1) the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*; (2) the Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code § 12926

*et seq.*; (3) the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*; and (4) the California Disabled Persons Act ("DPA"), Cal. Civ. Code § 54 *et seq*. *See* FAC (Dkt. No. 22). The following background contains facts taken from the first amended complaint ("FAC") and relevant facts from a previous state court lawsuit, *Antisdel v. AIDS Healthcare Foundation et al* ("*Antisdel*"), LASC No. 21STCV04049.[1] *See* FAC; Def.'s Request for Judicial Notice ("RJN", Dkt. No. 23-2) Ex. 1 (*Antisdel* FAC) and Ex. 2 (*Antisdel* Pls.' Request for Dismissal).

Plaintiffs are disabled tenants at The Madison, a single room occupancy hotel ("SRO") that is owned by Defendant. *See id.* ¶ 1. The Madison has one elevator serving the six-story building and the residents must share community bathroom facilities. *Id.* ¶ 3. Plaintiffs allege that Defendant "refuses to maintain and repair the elevator to keep it in working order" despite their repeated requests over six years. *See id.* ¶ 1. The elevator is the only means for a disabled tenant who cannot climb stairs to access their home or to leave The Madison "without experiencing significant pain or, in some instances risking life and limb." *Id.* ¶ 3.

Ms. Davis has arthritis due to an autoimmune disease and was transferred to the first floor from the second floor after her neighbor's stove exploded, significantly damaging her unit. *Id.* ¶ 48. However, there are no working showers on the first floor, so Ms. Davis must continue to use the bathroom facilities on the second floor. *Id.* This requires Ms. Davis to leave her wheelchair in the lobby and "ascend" the stairs, which causes her troubles with breathing, heart racing, knee pain, and upper arm pain. *Id*. Mr. Linwood is 72 years old, resides on the third floor, has advanced

---

[1] Defendant requests the Court to take judicial notice of the following court records in *Antisdel*: (1) the first amended complaint, (2) the Request for Dismissal with Prejudice entered on March 20, 2023, and (3) the case summary publicly available on the Los Angeles County Superior Court website. *See* RJN (Dkt. No. 23-2). The Court grants Defendant's request and takes judicial notice of the filings in *Antisdel* because they are undisputed matters of public record. *See Harris v. County of Orange*, 682 F.3d 1126, 1131-1132 (9th Cir. 2012).

1  Chronic Obstructive Pulmonary Disease, pain in his legs, and acts as the "record
2  keeper" and "tenant advocate" which requires him to visit tenants on other floors.
3  *Id*. ¶ 49.
4        The FAC details events from September 2017 to March 2024.  Defendant
5  purchased The Madison on September 27, 2017.  *Id*. ¶ 3.  At the time of purchase, the
6  Los Angeles Fire Department had already "red tagged" the elevator for numerous
7  violations of Elevator Safety Orders and noncompliance with previous Orders to
8  Comply, and there was a settlement agreement between the tenants and the prior
9  owner regarding the elevator. *See id*. ¶ 9.  The FAC provides further events relating to
10 the elevator's functionality; elevator repairs; numerous tenant maintenance requests to
11 Defendant; recommendations made to Defendant regarding the repair, renovation, or
12 replacement of the elevator; various communications with Defendant; Orders to
13 Comply issued by the City of Los Angeles; an investigation of Defendant;
14 Defendant's sworn testimony regarding the elevator's functionality; harm to tenants
15 including death, bodily injury, and entrapment; and media coverage. *See id*. ¶¶ 2-40.
16       **A. The *Antisdel* Action**
17       In 2021, 18 disabled tenants, including Ms. Davis and Mr. Linwood, brought a
18 state court action against Defendant.  *See id*. ¶ 35; *Antisdel* FAC.  The plaintiffs
19 asserted claims for state law violations under the FEHA (Cal. Govt. Code § 12955),
20 the DPA (Cal. Civ. Code § 54.1), and the Unruh Act (Cal. Civ. Code § 51 et seq.)*,* as
21 well as negligence, arising from recurring elevator outages at The Madison. *See id*. ¶
22 35; *Antisdel* FAC.  The *Antisdel* first amended complaint alleged as follows.
23       The *Antisdel* plaintiffs were all tenants and third-party beneficiaries of a
24 February 27, 2018 settlement agreement ("the *Obermyer* agreement") from a case
25 filed on February 24, 2016 by sixteen tenants (including Mr. Linwood) against The
26 Madison's previous owner, and alleged identical claims as the *Antisdel* action. *See id*.
27 ¶ 31.  The *Obermyer* agreement contained several terms, including maintaining the
28 elevator in working order, requiring accommodation of tenants with disabilities, and

attending disability-rights training. *See id.* ¶¶ 31-32. Defendant purchased The Madison in September 2017 and the counsel for plaintiffs in *Obermyer* notified Defendant of the *Obermyer* lawsuit and settlement agreement. *See id.* ¶¶ 33-34.

On November 5, 2018, three tenants sued Defendant, in part, for failing to have a working elevator. *See id.* ¶ 35. On March 4, 2020, a class action lawsuit was filed against Defendant (*Davis v. AIDS Healthcare Foundation*, LASC Case No. 20STCV08627), in part, because Defendant failed to provide a working elevator. It was only after the class action lawsuit that Defendant supposedly took affirmative steps to fix the elevator. *See id.* ¶ 36. Defendant started elevator repairs in August 2020, but the elevator remained out of order, the elevator was broken more than it worked, Defendant continued not to accommodate tenants who required assistance with stairs, and Defendant "knowingly" failed to provide a working elevator despite being sued repeatedly for the lack of a working elevator. *See id.* ¶¶ 36-37.

The *Antisdel* complaint details the tenants' disabilities and elevator-related challenges. *See id.* ¶¶ 38-71. The complaint also alleged that Plaintiffs suffered and continued to suffer "monetary, physical, and emotional damages." *See id.* ¶ 75. The plaintiffs sought monetary compensation, statutory damages, declaratory relief, and injunctive relief to "prevent" Defendant from "continuing to ignore [its] lawful duties." *See id.*

In 2023, Defendant offered settlement offers, and four of the plaintiffs, including Ms. Davis and Mr. Linwood, initially refused the offers. *See* FAC ¶ 35. On January 1, 2023, Defendant's reasonable accommodation expert gave sworn testimony that it would be reasonable for Defendant to install a stair chair lift between the first and second floor. *Id.* ¶ 37. The day before the final status conference, set for January 20, 2023, Defendant "rushed" Amtech (an elevator company) to prepare an "emergency basis" quote to renovate the elevator. *Id.* ¶ 39. The four remaining plaintiffs released their claims in exchange for a monetary payment and the *Antisdel* action was dismissed with prejudice. *See id.* ¶ 40; RJN Ex. 2 (Request for Dismissal).

**B. Post-*Antisdel***

Since dismissal of *Antisdel*, Defendant has not moved forward with renovations it commissioned on an "emergency basis" in January 2023. *See* FAC ¶ 41. The elevator continues to go out of service for days at a time. *See id.* In May 2023, Defendant took out a permit to repair the elevator. *See id.* ¶ 42. On August 4, 2023, there was another entrapment in the elevator where the Los Angeles Fire Department was "forced to cause severe damage" to the elevator platform and "sill in order to extricate tenants." *Id.* ¶ 43. LADBS issued a preliminary order to return the elevator to service no later than September 11, 2023. *Id.* ¶ 43. The elevator remained out of service for weeks. *Id.* "Pre-litigation inquiries" from Plaintiffs' counsel to Defendant's in-house counsel "have been ignored or not substantively responded to." *See id.* ¶ 43. LADBS issued a new order to restore elevator service by October 10, 2023, and Defendant did not comply. *Id.* ¶ 45. Defendant finalized elevator repairs on March 15, 2024; however, on the same day, the elevator malfunctioned, and someone was trapped inside. *Id.* ¶ 46. To date, Defendant has not installed a stair chair lift or looked into installing it. *Id.* ¶ 47. Plaintiffs therefore seek injunctive relief to require Defendant to provide equal accommodations and services to Plaintiffs. *See generally* FAC.

Defendant moves to dismiss the FAC, arguing that res judicata bars Plaintiffs' claims. *See* Mot. at 1. If res judicata does not apply, Defendant argues that the "post-*Antisdel* facts" in the FAC are insufficient to state a claim under Rule 12(b)(6). *See id.* In the alternative of dismissal, Defendant moves for a more definite statement pursuant to Rule 12(e) and/or to strike immaterial allegations that were released and dismissed with prejudice in *Antisdel* and to strike the prayers for relief that are duplicative of the ones sought and released in *Antisdel* pursuant to Rule 12(f). *See id.* at 17.

**II.   LEGAL STANDARD**

Rule 8 requires a plaintiff to present a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face." *Id.* That is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a), leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations and quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made,

unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (quotation marks omitted). Leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendant contends that Plaintiffs' claims are barred by res judicata because three of the four causes of action in the FAC were brought, settled, and dismissed with prejudice in *Antisdel*; the same primary rights are at issue in both actions; and the same remedies are sought in both actions. *See* Mot. at 5-9. In the alternative, Defendant argues that "at minimum, the first 40 paragraphs of the FAC and the overlapping/duplicative relief sought in the Prayer" are barred by res judicata, and the Court should strike this material from the FAC pursuant to Rule 12(f). *See id*. at 9.

"The doctrine of res judicata operates to bar all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties (or their privies) on the same cause of action, if the prior suit concluded in a final judgment on the merits rendered by a court of competent jurisdiction." *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 457 (9th Cir. 1980) (citing *Lawlor v. National Screen Service*, 349 U.S. 322, 329 (1955)). Federal courts accord the same preclusive effect to a state court judgment as the courts in the state would. *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016) (citing 28 U.S.C. § 1738). Thus, the Court looks to California's preclusion rules in this case. In California, res judicata applies when "(1) [a] claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (Cal. 2010) (internal quotation marks omitted).

The second and third elements are both met. It is undisputed that Plaintiffs and

Defendant were both parties to the *Antisdel* action, Plaintiffs settled and released their claims against Defendant in exchange for a monetary payment, and Plaintiffs dismissed the *Antisdel* action with prejudice. "[F]or purposes of applying the doctrine of res judicata, … a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action." *Boeken*, 48 Cal. 4th at 793 ("The statutory term 'with prejudice' clearly means the plaintiff's right of action is terminated and may not be revived. A dismissal with prejudice bars any future action on the same subject matter.") (cleaned up). Thus, *Antisdel* resulted in a final judgment on the merits. *See id.*

The Court now turns to the first element: whether the claims or issues raised in the present action are identical to those litigated in *Antisdel*. California courts apply the "primary rights" theory to determine whether two suits raise the same "cause of action." *See id.* at 797-98. Under the primary rights theory, a "cause of action" is "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *See id.* at 798. The determinative factor is the harm suffered. *See id.* at 814. "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1233 (9th Cir. 2014) (internal citations omitted). Res judicata under California law "bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised." *Id.* "The primary right must also be distinguished from the remedy sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.'" *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (Cal. 2002).

Here, allegations in the FAC and the first amended complaint in *Antisdel* overlap substantially. *See* FAC; *Antisdel* FAC. As Defendants point out, many of the

8

1  paragraphs in the FAC contain virtually the same allegations as the operative
2  complaint in the *Antisdel* action. *See* Mot. at 6. Plaintiffs assert that the pre-*Antisdel*
3  facts are included in the FAC "to show Defendant's pattern and practice of allowing
4  the elevator to remain in disrepair, its flouting of all previous enforcement efforts, and
5  its actual knowledge of the harms it caused its disabled tenants." *See* Opp'n at 11.
6  Plaintiffs further argue that "[t]hese facts support Plaintiffs' burden to establish
7  intentional behavior under [the Unruh Act] and their claims for treble and punitive
8  damages." However, this is a clear example of claims which invoke "the same injury
9  to the same right" already litigated in *Antisdel*. *See Boeken*, 48 Cal. 4th at 798. The
10 claims plainly involve the same parties seeking compensation for the same harm,
11 regardless of the claims they bring and the type of relief they seek. *See id.*

### A. Post-*Antisdel*

13 Defendant asserts that even if Plaintiff relies on events that occurred after the
14 dismissal of *Antisdel* ("post-*Antisdel* facts"), "the same primary rights are at issue—
15 namely, the alleged right to demand that the elevator … be completely replaced and
16 the alleged right to demand certain accommodations such as a stair chair lift for when
17 the elevator is not functioning." *See* Mot. at 6. Defendant argues that with the
18 *Antisdel* settlement Plaintiffs released their claims "knowing that the elevator had not
19 yet been repaired" and therefore "the likelihood of future harm from ongoing elevator
20 issues while the repairs were undertaken was a known claim." *See id.* at 7. Defendant
21 contends that Plaintiffs have admitted that the contemplated repairs have been
22 completed and do not claim a breach of the settlement agreement for the time it took
23 to complete the repairs (and if they did claim this, the action would be subject to
24 arbitration under the arbitration clause in the settlement agreement). *See id.*
25 Defendant further argues that in *Antisdel* Plaintiffs sued for negligence and sought
26 damages which "as matter of law includes damages for future harm," and Plaintiffs
27 also sought injunctive relief to require a replacement elevator, training of Defendant's
28 employees, and other accommodations. *See id.* at 7-8 (citing *Boeken*, 48 Cal 4th at

803 (holding that "a tort plaintiff may [generally] recover prospective damages, as long as it is sufficiently certain that the detriment will occur.")).

Plaintiffs argue that the FAC is not barred by res judicata because it raises new claims of new injuries predicated on new facts which postdate the *Antisdel* settlement. *See* Opp'n at 8; *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 415 (2020) ("Events that occur after the plaintiff files suit often give rise to new material operative facts that in themselves, or taken in conjunction with the antecedent facts, create a new claim to relief.") (internal quotations marks omitted) (cleaned up). Plaintiffs contend that they allege new conduct, which consists of Defendant's noncompliance with the LABDS's orders to put the elevator back in service by September 2023 and a second order to do so by October 2023 and injuries to Plaintiffs from taking the stairs, in addition to Defendant's ongoing failure to maintain and repair the elevator. *See* Opp'n at 10. Plaintiffs rely on *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327-28 (1955), for the proposition that "[a] prior settlement 'cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" *See* Opp'n at 9-10. Plaintiffs contend that the *Antisdel* settlement, "as in *Lawlor*, was simply a device enabling [Defendant] to continue its discriminatory behavior" and "settling a lawsuit for its illegal behavior does not immunize Defendant to continue violating the law." *See id.* at 10. Plaintiffs' Opposition does not address Defendant's primary rights argument. *See generally id.*

The Ninth Circuit has held that a prior judgment cannot bar post-judgment conduct even where the "facts alleged were much the same." *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1436, 1438-39 (9th Cir. 1985). Two suits involving "essentially the same course of wrongful conduct is not decisive," as "[s]uch a course of conduct … may frequently give rise to more than a single cause of action." *See Lawlor*, 349 U.S. at 327-28. Thus, Plaintiffs may bring a new claim premised on facts representing a continuance of Defendant's same course of conduct.

10

As Defendant points out, Plaintiffs have failed to allege "sufficient facts that would amount to a stand-alone claim that is separate and independent from what was litigated and dismissed with prejudice in *Antisdel*." *See* Reply at 4. It appears that the present case and *Antisdel* arise from materially similar facts. For example, the FAC alleges new elevator outages, claims that Defendant has failed to install or investigate the installation of a stair lift as a reasonable accommodation, and raises the sworn testimony of a reasonable accommodation expert used in *Antisdel* as support for this claim. "If two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake, even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Atwell v. City of Rohnert Park*, 27 Cal. App. 5th 692, 699 (Cal. App. 2018). The same course of wrongful conduct could give rise to a new cause of action; however, here, Plaintiffs' new claims are related to either Defendant's failure to take certain actions in relation to the *Antisdel* settlement or the inadequacy of Defendant's actions taken in furtherance of the agreement. *See* FAC ¶¶ 41–47. Thus, the "post-*Antisdel*" conduct alleged cannot support a cause of action standing alone to form the basis of a new cause of action not precluded by the *Antisdel* settlement. While Defendant is not immunized against all suits concerning subsequent instances of the same conduct, the FAC has not formed a new basis for a suit which is not connected to *Antisdel*.

Defendant also argues that even though this action includes a different claim from *Antisdel*—the FHA claim—the actions involve the same primary rights, and an FHA claim was within the scope of the subject matter and could have been asserted in *Antisdel* to the extent the claim was viable; and therefore, this claim is also barred by res judicata. *See* Mot. at 8. It is evident that the FHA claim involves the same primary rights: the right to a working elevator and the right to receive reasonable accommodations such as the installation of a stair lift and the training of employees. The wrongs and injuries alleged in both actions are virtually the same. *See Atwell*, 27

11

Cal. App. 5th at 699.

Because Defendant's Motion to Dismiss is granted, the Court need not address Defendant's motion for a more definite statement and motion to strike.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Because no amendment could cure the deficiencies discussed above, this action is hereby **DISMISSED WITH PREJUDICE**.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.

**IT IS SO ORDERED.**

Dated: August 20, 2024

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE